RAYMOND H. ADAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6203–69. Filed May 29, 1973.

*William T. Sheffield* and *Mark H. Berliant*, for the petitioner.
*Juandell D. Glass*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in the joint individual income tax liability of Raymond H. Adams and his former wife, now known as Nellie M. Wagonmaker (not a party in this case), as follows:

| Year | Deficiency | Year | Deficiency |
|---|---|---|---|
| 1956 | $9,189.84 | 1959 | $14,610.28 |
| 1957 | 20,844.16 | 1960 | 21,554.71 |
| 1958 | 28,272.29 | 1961 | 31,290.26 |

There were also substantial additions to tax under section 6653(b), I.R.C. 1954;[1] the Commissioner has conceded, however, that the asserted underpayments were not due to *fraud* on the part of Raymond H. Adams, who is the sole petitioner before us. The parties now agree that the correct deficiencies for the years 1956 through 1961 are as follows:

| Year | Deficiency | Year | Deficiency |
|---|---|---|---|
| 1956 | $3,406.67 | 1960 | $7,980.00 |
| 1957 | 7,746.67 | 1961 | 11,620.00 |
| 1958 | 10,500.00 | | |
| 1959 | 5,413.33 | Total | 46,666.67 |

The sole issue for our determination is whether petitioner is relieved from liability for the underpayment under section 6013(e), the "innocent spouse" statute.

### FINDINGS OF FACT

Petitioner is an individual who resided in Cincinnati, Ohio, during the taxable years before us and at the time of filing the petition; joint Federal income tax returns were filed by petitioner and his former wife, Nellie Mae, with the district director of internal revenue at Cincinnati during each of the years before us. Petitioner and Nellie Mae were separated in 1962 and divorced in 1965, and Nellie Mae subsequently remarried. There was a property settlement agreement incident to the divorce according to which the property held by petitioner and Nellie Mae was divided 3 ways, petitioner and Nellie Mae each taking one-third, and one-third going to the three children of the marriage, Joyce, Carol, and Bruce, in equal shares. Joyce and Carol

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

received their shares outright; the share of Bruce, who was at the time of the settlement still a minor, was placed in trust.

The total separate net worth of petitioner at the time of divorce in 1965 but prior to the distributions under the settlement was $33,341.92. However, the combined net worth of petitioner and Nellie Mae as of the end of 1961 was over $517,000; at the end of 1956 it was $248,569. Petitioner did not know of many of the assets held by Nellie Mae; for example, he was unaware of a savings and loan account maintained by her which on December 31, 1961, had a balance of approximately $234,000. Pursuant to the property settlement, petitioner was distributed the following assets:

| | | |
|---|---|---|
| Cash | | $89, 666. 00 |
| Uarco, Inc., common (3,956 shares, 1965 value of $23.50/share) | | 92, 966. 00 |
| Standard Register Co. common (420 shares, 1965 value $22/share) | | 9, 240. 00 |
| Midland-Guardian Co. common (237 shares, 1965 value $41/share) | | 9, 717. 00 |
| Cambridge Tile Co. common (33 shares, 1965 value $9.50/share) | | 313. 50 |
| Real estate located in Michigan | | 7, 982. 55 |
| Series E bonds | | 1, 675. 00 |
| Promissory note (from Harry Pallas) | | 620. 00 |
| Other real estate: | | |
| Adams Road | $9, 166. 00 | |
| Losantiville Avenue | 6, 166. 00 | |
| Total | | 15, 332. 00 |
| Furniture and automobiles | | 1, 217. 00 |
| Dividends and interest accumulated over 2 years | | 10, 986. 00 |
| Life insurance policy: $100,000 on life of Bruce Adams | | 17, 500. 00 |
| Total | | 257, 215 .05 |

Petitioner did not assume substantial liabilities as a result of the settlement.

The circumstances of Nellie Mae's concealment of assets from petitioner are as follows. Petitioner's principal source of income was the marketing of printed business forms under the business name of Accurate Business Systems. In 1952 Nellie Mae began selling forms also, and was highly successful as a businesswoman. The husband and wife did not conduct business as a partnership, but rather kept their businesses separate with the latter depending on referrals from petitioner at first. From 1952 through 1955, petitioner kept a record of Nellie Mae's sales commissions. From 1956, however, she did not supply sales information to petitioner. During the taxable years before us, Nellie Mae made bank deposits, kept books, and prepared joint income tax returns for petitioner and herself. She repeatedly refused to furnish petitioner copies of the tax returns. It is clear that the underpayments of tax for those years are due to omissions by her of income she earned from sales, as she had no other sources of income.

On the joint returns filed in the years before us, the omissions from gross income were attributable to Nellie Mae and exceeded 25 percent of the amount of gross income stated on the return. The condition of section 6013(e)(1)(A)[2] is satisfied.

OPINION

In order to be relieved from liability as an "innocent spouse" petitioner must shoulder the burden of proving that the three conditions of section 6013(e) are met and not just one of them. *Jerome J. Sonnenborn*, 57 T.C. 373 (1971); *Nathaniel M. Stone*, 56 T.C. 213, 227 (1971). Petitioner's burden as to subparagraph A thereof has been disposed of by stipulation. The Commissioner contends that the remaining two conditions have not been met. First, he argues, petitioner was put on notice of the omissions by his former wife's refusal to be forthright about the family income. We agree. Petitioner claimed at trial that his signature on the Federal tax returns was forged or at least obtained under duress. Even if this were true, petitioner made no effort to ascertain the correct income of the family and made no effort to set straight his separate tax liability with the Commissioner. There is no showing that the books and records maintained by Nellie Mae were not available to petitioner. That being the case, his actual lack of knowledge of the omissions of income will not suffice to bring petitioner within the language of section 6013(e)(1)(B). *Herbert I. Joss*, 56 T.C. 378 (1971); *Jerome J. Sonnenborn, supra.*

The Commissioner's second argument, to which most of the evidence received at trial pertains, is that petitioner significantly benefited directly and indirectly from the omissions, and in the absence of any countervailing circumstance, that it would *not* be inequitable to hold petitioner for Nellie Mae's omissions. The Commissioner prepared net worth data in anticipation of the trial of the issue of fraud, which was subsequently dropped from this case. That evidence, which

---

[2] Sec. 6013(e)(1) provides:

(1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, if—

(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,

(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and

(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.

has not been refuted by petitioner, shows an increase in the combined net worth of petitioner and Nellie Mae of $268,990 over the period 1956 through 1961. That the petitioner benefited from the income which produced this increase in net worth, much of which was not reported, is indicated, according to the Commissioner, by the property settlement, through which petitioner received a distribution of assets worth $257,000 although prior thereto his separate net worth was only $33,000. Petitioner's factual contention that his separate net worth was not augmented by the distribution is unpersuasive.

Petitioner has in no way indicated facts that would lead us to conclude that he did not benefit. If the Commissioner's figures based on the net worth calculations and the property settlement were wrong, that would not be enough to discharge petitioner's burden of proving that he did not benefit directly or indirectly from the omission. Moreover, we have not been alerted to facts and circumstances that would make it inequitable to hold petitioner liable regardless of the question of benefit. The burden of proof in this case is on petitioner. The testimony and evidence of record is woefully inadequate to carry that burden. Petitioner's own testimony on some facets is almost incredible. Accordingly, we conclude that the conditions of section 6013(e)(1)(B) and (C) have not been met and therefore that petitioner is not entitled to relief as an innocent spouse.

*Decision will be entered for the respondent.*